67 So.2d 218 (1953)
FLORIDA VENTILATED AWNING CO., Inc., et al.
v.
DICKSON et al.
Supreme Court of Florida, Division A.
July 28, 1953.
George A. Brautigam, Miami, Hylan H. Kout and Montague Rosenberg, Miami Beach, for appellants.
Robert H. Givens, Jr., Miami, for appellees.
TERRELL, Justice.
This appeal is from a contempt order in Jack Dickson and Benjamin Horrow, as copartners, doing business as Miami Ventilated Awning Shutter Company v. Florida Ventilated Awning Company, Inc., a Florida corporation, Drew Harris and Stanley S. Davidson. A final decree adjudging defendants in contempt for violating the terms of said final decree was entered October 5, 1952. This appeal is from the contempt order.
The point for determination is whether or not defendants were guilty of contempt.
That part of the final decree which is said to have been violated and on which the contempt order was predicated is as follows:
(a) using the word "ventilated" or any word similar thereto or of similar meaning in the name of said defendant corporation or in connection with their awning and shutter business;
(b) from using the expressions "ventilated awning" and "ventilated awning shutter" or the word "ventilated" to describe or to identify any awning or awning shutter manufactured or sold by said defendants;
(c) from employing or using in any manner, directly or indirectly, any telephones, telephone service or telephone numbers listed now or hereafter in any telephone book or with any telephone company in any name containing the words "Ventilated Awning" or "Ventilated."
*219 The rule to show cause alleges that on September 15, 17, 19, and 22, 1952 in violation of the injunctive order, defendants did (a) place advertisements using the name "Florida Ventilated Awning Company, Inc.," and the expression "Ventilated Awnings," referring to exhibits attached in one of the local papers. (b) Continued to use and still uses the telephones, service and numbers listed under name of Florida Ventilated Awning Company, Inc.
It appears from the evidence taken before the chancellor that an appeal was prosecuted from the injunctive order September 19, 1952, that copy of the final decree was received by counsel for appellants late September 15th. It further appears that defendants had standing orders with the paper for advertisements of its goods on Monday, Wednesday and Friday of each week, that they learned of the injunctive order on the 15th of September 1952, and since an appeal was promptly taken they were of the view it would be proper to continue their advertising, that if they had committed a wrong it was not wilful, that defendants were served with a copy of the rule to show cause on September 24, 1952, at which time they were advised by counsel to cease advertising and since being so advised they avow that they had done all they knew to comply with the final decree.
To summarize, the evidence shows that the final decree was complex and comprehensive with a large number of directives and commands, there were three alleged violations by advertising and they had been long contracted for. Defendants had these cut off as soon as they were advised to do so. The chancellor stated that the effect of such unintentional violations was of no "great importance" yet he imposed a fine of $250 on each defendant and $500 on the company. Defendants were laymen and so far as this record shows, men of good repute. It certainly cannot be said that the injunctive order was simple as to terms. There was no intent to disobey the order and I understand intention to be one of the elements of contempt. They thought they had a good ground to appeal, they were not fully conscious of the effect of the injunctive order and apparently were doing all they could to comply with it. They stopped the alleged violations as soon as they were advised.
The contempt order is therefore reversed.
Reversed.
ROBERTS, C.J., and SEBRING and MATHEWS, JJ., concur.