JOANOS, Judge.
This is an appeal from an adjudication of indirect criminal contempt. We reverse.
Appellant Thompson, an attorney, undertook representation of Marlow in a criminal proceeding. Thompson failed to appear on the date ultimately set for trial, May 20, 1982. On May 21,1982, Judge Wells issued an order to show cause why Thompson should not be held in contempt, and subsequently, following a hearing, Thompson was held to be in indirect criminal contempt of court.
The case had been set for trial on May 17, 1982. Thompson’s law partner, Adkinson, appeared on May 11,1982, seeking a continuance of the trial until Thompson’s expected June, 1982, return from Egypt, where he was carrying out business for another client. At this May 11 hearing, the state attorney objected to the continuance. The court stated to Mr. Adkinson:
THE COURT: Well, let’s see. If we set it on the 20th, you’ll have that long to get ready if you’re going to try it.
MR. ADKINSON: Well, Judge, I don’t think it’s fair to the Defendant to make me have to try it.
The trial was reset for May 20, 1982.
On May 20, 1982, Adkinson appeared and again requested a continuance until Thompson’s return. The court denied the continuance and this discussion occurred:
THE COURT: ... and its your position that even though you and he are law partners that you’re not in position to go forward with this case, is that correct, in the trial of this case?
MR. ADKINSON: Your Honor, the Defendant wishes to wait until Mr. Thompson returns so that he can try this case.
THE COURT: Mr. Marlow, is it your position that you do not want Mr. Adkin-son to represent you on this case, in the trial of this cause here today?
MR. MARLOW: Yes, Your Honor, it is.
The judge then said he would not require Marlow to go to trial with Mr. Adkinson since he was not the attorney Marlow had hired. Trial was rescheduled for June and the order to show cause why Thompson should not be held in contempt for his failure to appear on May 20 was issued.
*342 At this hearing on the order to show cause, held June 28, 1982, Marlow testified that he was aware of Thompson’s trip to Egypt, and that when Thompson agreed to the representation, he had explained there was a possibility he would not be in town for the trial, but that either he or Adkinson would be available throughout the case. Marlow also said they had been prepared to go to trial on May 20, but he had wanted to wait until Thompson could be present because he did not know Adkinson well. Mar-low had known Thompson for fifteen years.
Adkinson testified that they had been prepared to go to trial on May 20, although when asked whether this preparedness was made clear to the trial judge on that date, Adkinson said “I don’t know that I ever specifically told him that I was ready to go to trial on the day that he — on the day of the trial.” Rather, when the judge asked if he was ready to proceed, his response had been that the defendant did not want him to try the case. Judge Wells testified that Adkinson had not specifically said he was unprepared for trial, but “he certainly said everything that would lead me to the conclusion that he was not prepared to try this case.”
Thompson testified he had initially informed Marlow of his business in Egypt and told Marlow if he were not present, Adkin-son would fill in for him. He said he and Adkinson had discussed the matter and Ad-kinson was to appear.
The legal standards regarding indirect criminal contempt are discussed in Ray v. State, 352 So.2d 110 (Fla. 1st DCA 1977), and Litus v. McGregor, 381 So.2d 757 (Fla. 5th DCA 1980), both of which quote Ex parte Biggers, 85 Fla. 322, 95 So. 763 (Fla.1923):
[I]f the matter complained of constituting contempt, when fairly interpreted, does not have a reasonable tendency to degrade or to embarass or hinder ... a judge in performing his own duty, or to affect a mind of reasonable fortitude, it is not a criminal contempt for which imprisonment may be lawfully adjudicated, particularly when an intent to offend is denied on oath.
Generally it is the nature and reasonable tendencies of the matter complained of that controls; and, if the matter is of doubtful tendency or might or might not be considered ambiguous as to its general or specific purpose, the circumstances under which the thing was done or in which its consequences are to appear, may be considered in determining the reasonable tendency of the matter to affect judicial authority or dignity ....
In the Ray opinion, the court noted that “[t]he power to punish for criminal contempt should be exercised cautiously and sparingly.”
The Litus case is factually somewhat similar to the present case so far as Thompson’s part in the proceedings under review is concerned. Litus, an attorney, missed a scheduled hearing of which he was aware, but which conflicted with matters scheduled at the same time in another court. Litus had asked his associate to take care of matters on the criminal docket on that date, but neglected to mention a specific case which was not listed on the docket. As a result, both the associate and Litus missed the hearing, and Litus was held in contempt. Reversing the contempt adjudication, the district court noted the record did not reflect that Litus acted in a willfully stubborn manner, or had previously missed or been late for a hearing, or had deliberately ignored the hearing knowing it would not be covered. No order had been entered requiring Litus’s attendance and there was nothing to show he ignored or disregarded previous instructions or warnings of the court. At worst, the court said, he was disorganized and negligent in his planning.
In the instant case, while the status of the representation arrangement and of the defense’s preparedness to go to trial was ambiguously and inappropriately presented to the court, there is no evidence to support the adjudication of contempt as to Thompson. The record does not show that he acted improperly. Marlow acknowledged that Thompson explained the situation regarding his business in Egypt when he orig *343 inally undertook representation. Thompson had no reason to believe that Adkinson would be unable to cover the case as they had arranged. Between the time the continuance was denied on May 11 and the rescheduled trial date, May 20, it does not appear that Thompson was made aware that if he did not appear he would be held in contempt. As to any conversations that occurred between Adkinson and Thompson from May 11 to May 20 through which Thompson might have been made aware of the urgency of the situation, at the June 23 hearing, Adkinson said he informed Thompson the continuance had been denied and “I don’t recall what his response was, other than — you know, I talked to him when he was over there and told him that it had been denied and that it had been rescheduled for the 20th and that we would get ready for trial.”
The judgment and sentence for indirect criminal contempt are REVERSED.
SHIVERS and WENTWORTH, JJ„ concur.