**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Craig KOBLITZ and Robert Scott Donley, Defendants,**

**and**

**Marcelino J. Huerta, III and Anthony F. Gonzalez, Contemnors-Appellants.**

No. 85–3559.

United States Court of Appeals, Eleventh Circuit.

Nov. 12, 1986.

James M. Russ, Orlando, Fla., Samuel R. Mandelbaum, Tampa, Fla., for contemnors-appellants.

John M. Fitzgibbons, Tampa, Fla., Kathleen A. Felton, U.S. Dept. of Justice, Criminal Div., Washington, D.C., for plaintiff-appellee.

National Association of Criminal Defense Attorneys, Peter Raben, Jeffrey S. Weiner, Weiner, Robbins, Tunkey & Ross, Miami, Fla., amicus curiae, for contemnors-appellants.

Before GODBOLD and TJOFLAT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

Appellants are two trial lawyers. The district court held them in civil contempt and fined them $2,500 because they violated an order directing them either to appear for the trial of their clients' criminal case or, in the event of appellants' unavailability, to obtain substitute counsel who would appear, prepared and ready for trial. Appellants challenge the validity of that order and ask us to set aside their contempt adjudications. We find the order invalid and reverse.

I.

On April 24, 1985, appellant Anthony F. Gonzalez filed a notice of appearance as defense counsel for defendant Ronald Scott Donley in *United States v. Boomhower*, No. 84–95–CR–T–15 (M.D.Fla.1984). Appellant Marcelino J. Huerta, III filed a notice of appearance for Craig Koblitz, another *Boomhower* defendant, on May 2, 1985. The trial of the *Boomhower* case, which had a total of six defendants, was scheduled to begin on May 28, 1985.[1]

At the time appellants filed their notices of appearance, they were engaged in the trial of a criminal case on the docket of another judge of the same district court.

---

1. *Boomhower* was originally scheduled for trial on September 4, 1984. For reasons not pertinent to this appeal, the court granted continuances until January 1985, March 1985, and May 28, 1985. As we point out in the text *infra*, on May 17, 1985, the May 28 trial date was changed to June 17, 1985.

*See United States v. Meros,* 613 F.Supp. 18 (M.D.Fla.1984). The *Meros* trial had begun on March 25, 1985, and the prosecution had estimated that the trial would last about eight weeks.

A potential scheduling conflict became apparent when a status conference took place in *Boomhower* on May 10. Appellants informed the court that they were representing defendants in the *Meros* trial, which was then in its seventh week, and that the trial would probably continue for another five weeks. Recognizing the potential conflict in the trial schedules, the court observed, "It may be necessary [for appellants to] make such arrangements as need to be made for [their] client's representation...."[2] Both appellants subsequently moved the court to sever their clients and to schedule their trial at a later date, after the *Meros* trial concluded. The court reserved judgment on their motions and set June 3 as the tentative trial date for all six defendants.

On May 13, the Government advised the judge presiding over the *Meros* trial, in response to an inquiry by appellant Gonzalez, that its case in chief would be completed in about three weeks. On May 17, the *Boomhower* court issued an order notifying all parties and their counsel that their trial would commence on June 17. In addition, the order provided as follows:

> All attorneys involved are instructed to review their commitments and to schedule other commitments such as to not interfere with the certain commencement of this trial on June 17, 1985. If any attorney, for any reason, concludes that he will not be available for trial, he forthwith shall make arrangements such as are necessary for his client to secure other, available, representation.

Appellants received this order on May 20.

Three days later, the Government advised the court in *Meros* that it would complete its case in chief about two weeks after the witness then on the stand completed his testimony. That witness completed his testimony on May 30; thus, the government's case was expected to conclude by June 13.

On June 4, appellant Gonzalez, realizing that the *Meros* trial would not end by June 17 and, therefore, that he would not be available for the commencement of the *Boomhower* trial on that date, moved the *Boomhower* court to continue the trial or to grant his client a severance.[3] In his motion, Gonzalez estimated that the *Meros* trial would not conclude until late June or early July and requested a trial date beyond that period. In urging this postponement, Gonzalez represented that his client, Donley, refused to go to trial with any other attorney, claiming that he was entitled to counsel of his choice. Gonzalez also represented that because of the complexity of the case and the extensive preparation required for trial, which he had already completed, it would be logistically and financially prohibitive for his client to obtain substitute counsel who would be prepared for trial on June 17.

The district court denied Gonzalez' motion for a continuance or severance. In its June 7 order, the court observed that (1) Gonzalez should have known when he filed his appearance in the *Boomhower* case that, because of the probable duration of the *Meros* trial, he would not be available for the *Boomhower* trial which was then scheduled to begin on May 28; (2) the court's May 17 order setting the *Boomhower* trial for June 17 was unequivocal; and (3) Gonzalez' scheduling conflict was "of his own making and he has had ample time to protect his client's interests."

After they received the June 7 order, appellants Gonzalez and Huerta moved the

---

**2.** There is no indication in the record that appellants' clients, Donley and Koblitz, were present at this status conference.

**3.** Appellant Huerta also realized on June 4 that he would be unavailable for the commencement of the *Boomhower* trial, but he did not move the court to sever his client, Koblitz, or to grant a severance. The record indicates, however, that Huerta was aware of Gonzalez' motion requesting such relief on behalf of Donley and of the court's denial of that motion.

*Meros* court to sever their clients from that case,[4] effectively granting them a mistrial.[5] The *Meros* court summarily denied their motions and informed appellants that they would proceed with the trial, giving their clients the representation the Constitution guaranteed them. Having been stymied by the *Meros* court, Gonzalez moved the *Boomhower* court to reconsider his motion for a continuance of the trial or a severance of his client. The court denied his motion on June 14.

When the *Boomhower* case was called for trial on the morning of June 17, Gonzalez and Huerta failed to appear. Their clients, Donley and Koblitz, appeared without counsel, and each stated that his attorney was involved in another trial. The clients insisted on being represented by their retained counsel and advised the court that they were unable to represent themselves. The court severed Donley and Koblitz from the remaining *Boomhower* defendants, and the trial commenced that morning as to the remaining defendants. At the same time, the court issued an order requiring appellants to appear during the noon recess.

Appellants Gonzalez and Huerta appeared before the court as ordered. The court asked appellants if they had made any effort to obtain substitute counsel for their clients. Both answered that they had made no such effort, although they had advised their clients of the scheduling conflict. Appellant Gonzalez stated, "up until 9:30 this morning I had all the expectations of being able to participate in this case on behalf of Mr. Donley." Appellant Huerta stated that he had discussed the problem with his client, who could not afford to retain another attorney and could not qualify for appointed counsel. Like Gonzalez, Huerta thought that the scheduling conflict would be resolved. Finally, both appellants admitted that they did nothing to advise the court that they would not be present for trial that morning.[6]

On June 19, 1985, the district court ordered appellants to show cause why they should not be adjudged in criminal contempt, under 18 U.S.C. § 401 (1982) and Fed.R.Crim.P. 42, or in civil contempt. The order suggested that the following conduct constituted criminal contempt: (1) appellants' failure to appear for trial on June 17, (2) their failure to give the court advance notice that they would not appear, and (3) their failure to obtain substitute counsel for their clients. The order suggested that the same conduct constituted civil contempt, in that it "necessitat[ed] the separate trial of defendants Donley and Koblitz in contravention of the judicial process and damag[ed] the United States in the amount of expense of such additional trial."

A contempt hearing was held on July 5, 1985, at which appellants were represented by counsel. After reviewing the evidence summarized above and hearing argument from counsel, the district court found appellants not guilty of criminal contempt. Nevertheless, because appellants, in violation of the court's May 17 order, failed to obtain substitute counsel when it became apparent to them that their involvement in the *Meros* trial precluded their participation in the *Boomhower* trial, the court adjudged them guilty of civil contempt.[7] Estimating the damages suffered by the Government

4. The record does not indicate whether appellants made this motion because it was in the best interest of their *Meros* clients to do so, or whether they made the motion in derogation of those clients' interest and solely for the benefit of their *Boomhower* clients, Donley and Koblitz.

5. Had the *Meros* court granted their motion without construing it—with the consent of appellants' clients—as a motion for a mistrial, the court's action may have operated as an acquittal because jeopardy had attached.

6. Appellant Gonzalez did file a "notice of unavailability" on June 17, the day of trial.

7. One could read the district court's order as a determination that appellants' failure to appear for trial, standing alone, constituted contempt. Such a reading would be unreasonable, because it was obvious that appellants had a lawful reason for their failure to appear. Had they appeared, the *Meros* court would have directed them to return immediately because the *Meros* trial was still in progress and their continued participation was indispensable.

at $5,000,[8] the court assessed half that amount against each appellant, plus interest, costs, and the attorneys' fees incurred by the Government. Gonzalez and Huerta appeal from the district court's judgment of civil contempt.

## II.

■ A civil contempt order can only be upheld if it is supported by clear and convincing evidence that (1) the underlying order allegedly violated was valid and lawful, *Smith v. Sullivan*, 611 F.2d 1050, 1052–54 (5th Cir.1980); *ITT Community Development Corp. v. Barton*, 569 F.2d 1351, 1356 (5th Cir.1978);[9] (2) the underlying order was clear, definite, and unambiguous, *see International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Association*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967); *Baddock v. Villard (In re Baum)*, 606 F.2d 592, 593 (5th Cir.1979); and (3) the contemnor had the ability to comply with the underlying order, *United States v. Wendy*, 575 F.2d 1025, 1030–31 (2d Cir.1978).

■ Appellants challenge the validity of the district court's May 17 order, the violation of which resulted in their contempt

adjudication.[10] As we have noted, the district court's June 19 show-cause order suggested that appellants had engaged in contemptuous conduct in three respects: (1) they failed to appear for trial on June 17, (2) they failed to inform the court that they could not appear, and (3) they failed to obtain substitute counsel for their clients, all in violation of the court's May 17 order. The court's order adjudging appellants in civil contempt, although appearing to be based on the combined effect of these three acts, is most reasonably interpreted as finding appellants in contempt for failing to obtain substitute counsel.[11] The question we must decide, therefore, is whether the district court had the discretion to order appellants to obtain substitute counsel.[12]

The sixth amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." It has long been recognized that a criminal defendant has a right to retain counsel of his choice. *Chandler v. Fretag*, 348 U.S. 3, 9–10, 75 S.Ct. 1, 4–5, 99 L.Ed. 4 (1954); *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58,

---

**8.** This figure was based on the Government's estimate that a separate trial for defendants Donley and Koblitz would cost approximately $10,000. The court discounted this sum to account for the possibility that one or both defendants might plead guilty prior to trial.

**9.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**10.** Appellants also contend that their noncompliance with the May 17 order was justified, that the court's finding of contempt was not supported by clear and convincing evidence, and that the contempt sanctions imposed on them were penal, rather than compensatory. In light of our determination that the May 17 order was invalid, we need not address these contentions.

**11.** *See supra* note 7. The following portion of the district court's order makes this plain:

The issue in this case may be broadly framed as being: when one attorney represents a defendant in one case whose trial date

conflicts with the trial date set for the trial of a defendant in another case represented by the same attorney, whether the Court may, after weighing alternative solutions, require that attorney to either appear, provide substitute counsel....

....

... [The court had required appellants] to be present [for trial] on June 17 or make other arrangements for the representation of their clients for trial on that date.

....

The non-appearing attorneys were ... requested to appear before the Court to explain their failure to take any steps to obtain substitute counsel or explain what steps they had taken. Counsel appeared and stated in effect that notwithstanding the Court's Order of May 17, 1985, they had taken no steps to procure substitute counsel and at that time and later offered various reasons for such inaction....

**12.** The validity of the district court's underlying order is a question of law and therefore is subject to plenary review by this court. *See United States v. Lopez*, 728 F.2d 1359, 1362 n. 4 (11th Cir.), *cert. denied*, 469 U.S. 828, 105 S.Ct. 112, 83 L.Ed.2d 56 (1984).

77 L.Ed. 158 (1932); *Birt v. Montgomery,* 725 F.2d 587, 592–93 (11th Cir.) (en banc), *cert. denied,* 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984). The United States Court of Appeals for the Sixth Circuit has observed as follows:

> The right to choose one's own counsel is an essential component of the Sixth Amendment because, were a defendant not provided the opportunity to select his own counsel at his own expense, substantial risk would arise that the basic trust between counsel and client, which is a cornerstone of the adversary system, would be undercut.

*Linton v. Perini,* 656 F.2d 207, 209 (6th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982). Stated in other words, the Constitution requires that a criminal defendant have "a fair or reasonable opportunity to obtain particular counsel, and [suffer from] no arbitrary action prohibiting the effective use of such counsel." *Gandy v. Alabama,* 569 F.2d 1318, 1323 (5th Cir.1978) (quoting *United States ex rel Carey v. Rundle,* 409 F.2d 1210, 1215 (3d Cir.1969), *cert. denied,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970)); *see Birt,* 725 F.2d at 593.

■ The right to counsel of choice is not absolute. It must be balanced against the government's interest in the fair, orderly, and effective administration of the courts which, in a given case, may require an accused to resort to his second choice of counsel. *Birt,* 725 F.2d at 593; *Gandy,*

569 F.2d at 1323; *Wilson v. Mintzes,* 761 F.2d 275, 280–81 (6th Cir.1985).[13] In giving effect to this governmental interest, however, a trial judge must be mindful that "acting in the name of calendar control, [he] cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney [the client] has selected." *Linton,* 656 F.2d at 209.

In the case before us, the Government's interest in the efficient administration of justice was sufficient to require Donley and Koblitz to obtain substitute counsel if they desired legal representation at their trial. The trial judge had previously postponed their trial several times. The case had originally been set for trial on September 4, 1984, and the speedy trial clock was running. Further continuances, or a severance, were out of the question; the interests of justice required a joint trial of all of the defendants without further delay. Obviously, the rights of appellants' clients to counsel of first choice would have to give way; the court could have directed the clients to engage substitute counsel. The court did not exercise this discretion, however. Instead, it directed their attorneys, the appellants, to obtain the substitute counsel.

The district court's action was unlawful for several reasons. First, by requiring appellants to obtain replacement counsel for their clients, the court unlawfully interfered with the clients' right to retain coun-

---

**13.** The court in *Rundle* discussed the difficult balance faced by the district courts:

> Desirable as it is that a defendant obtain private counsel of his own choice, that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice. The calendar control of modern criminal court dockets, especially in metropolitan communities, is a sophisticated operation constantly buffeted by conflicting forces. The accused's rights—such as those relating to a speedy trial, to an adequate opportunity to prepare the defense, and to confront witnesses—are constantly in potential or real conflict with the prosecution's legitimate demands for some stability in the scheduling of cases. The availability of prosecution witnesses is often critically dependent on the predictability of the trial list. That delays and postponements only increase the reluctance of witnesses to appear in court, especially in criminal matters, is a phenomenon which scarcely needs elucidation.
>
> Moreover, it is not only the prosecution which may suffer from unscheduled changes in the calendar. To permit a continuance to accommodate one defendant may in itself prejudice the rights of another defendant whose trial is delayed because of the continuance. Played to an extreme conclusion, this indiscriminate game of judicial musical chairs could collapse any semblance of sound administration, and work to the ultimate prejudice of many defendants awaiting trial in criminal courts.

*Rundle,* 409 F.2d at 1214 (footnote omitted), *quoted in Gandy,* 569 F.2d at 1323 n. 9.

sel of choice. The sixth amendment right to counsel is solely the right of the accused.[14] "In general defendants are free to employ counsel of their own choice and the courts are afforded little leeway in interfering with that choice." *United States v. Cox*, 580 F.2d 317, 321 (8th Cir. 1978), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979) (citations omitted). Although a district court's interest in the management of a case and the control of its calendar is strong, that interest is not permissibly furthered by requiring an attorney to obtain substitute counsel for his client when the client has expressed a specific desire to retain his present counsel. A trial court can lawfully further that interest—for example, where the substitution of counsel is necessary to permit a case to progress to trial—by informing *the accused* of his trial date and that he must obtain substitute counsel or face trial alone.[15] The district court did not follow such a course in this case. Rather, it shifted the burden of obtaining alternative representation onto the attorneys and never informed the clients that they had to secure alternative representation for the June 17 trial. In sum, the court unlawfully required appellants to "second guess" the express intent of their clients.

Aside from the sixth amendment objection to the court's May 17 order, a second ground for the invalidation of the order is that it created an inherent conflict of interest between the appellant-attorneys and their clients, particularly if the attorneys had received and spent an advance payment of fees from their clients. By requiring appellants to employ new counsel, the court caused three problems, the first two of which are related. First, if their clients had paid appellants more than sufficient funds to cover services rendered, the clients might demand that appellants underwrite all or a portion of substitute counsel's fees. In such a case, appellants might be inclined to hire the least expensive and the least experienced attorneys available. Second, if appellants felt that they had earned whatever fees their clients had advanced, they would be unwilling to underwrite any portion of substitute counsel's fees.[16] Third, the court's order created a potential for fee splitting in violation of the Florida Code of Professional Responsibility. Appellants, being sole practitioners, would have had to retain substitute counsel and presumably pay counsel out of any funds advanced to them by their clients. The code proscribes such fee splitting unless the client consents to the arrangement. Fla.Code of Professional Responsibility DR 2–107 (West 1983) ("A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, [unless the] client consents to employment of the other lawyer after a full disclosure that a division of fees will be made."). By creating the ethical problems we have described, the district court's order unlawfully undermined "the basic trust between counsel and client, which is the cornerstone of the adversary system." *Linton*, 656 F.2d at 209.

Finally, there was, and is, no authority for the district court's requirement that appellants spend their own funds to provide their clients with substitute counsel. The obligation to pay substitute counsel

---

**14.** Justice Stewart observed, "The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction." *Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 2540–41, 45 L.Ed.2d 562 (1975); *see also Wilson*, 761 F.2d at 279–80 (right to select counsel is a fundamental and personal right).

**15.** This, of course, assumes that sufficient time remains for the accused to employ new counsel and for new counsel to prepare for trial. It also assumes that the accused is not eligible for court-appointed counsel.

**16.** A similar problem might have arisen had the court required the clients to obtain substitute counsel or stand trial alone. In deciding whether to employ new attorneys, the clients would doubtless look to appellants for reimbursement of any unearned fees. The clients might also demand that appellants refund the earned fees, arguing that appellants should not have undertaken to represent them, given appellants' existing commitments in the *Meros* case, and that appellants' efforts were therefore wasted.

laid with the defendants, Donley and Koblitz.

We thus conclude that the district court's May 17 order was invalid, because it required appellants to obtain substitute counsel for their clients in violation of the sixth amendment rights of their clients and because it created an inherent conflict of interest between appellants and their clients, as well as associated ethical problems.

 Our reversal of the district court's contempt adjudication should not be construed to condone appellants' conduct in this matter. First, they should not have agreed to represent Donley and Koblitz, knowing that their commitment to their clients and the court in the *Meros* case would probably preclude them from participating in the *Boomhower* trial. Second, by agreeing to represent Donley and Koblitz, appellants created a serious potential for a conflict of interest between those clients and their clients in the *Meros* case.[17] Third, appellants' ethical obligation to the United States District Court for the Middle District of Florida mandated that they fully and candidly apprise the judges presiding over both cases of the scheduling and representation predicament they had created. Had appellants done that, particularly in the *Boomhower* case, the judge presiding over that case would have ordered Donley and Koblitz, and appellants, to appear before him immediately. The court would have advised Donley and Koblitz of the following: (1) their case was scheduled for trial on June 17; (2) although the Constitution guaranteed them the right to counsel of choice, that right is not absolute and must give way to the need for a speedy and efficient trial[18] and to other vital concerns associated with the fair administration of justice; and (3) in light of the likelihood that appellants would be unavailable for trial, they could employ other counsel or stand trial unrepresented. If after hearing from appellants and their clients, the court

determined that sufficient time remained before the June 17 trial date for the acquisition of new counsel and adequate preparation for trial, it would no doubt have advised Donley and Koblitz that no further continuances would be granted and that they would proceed to trial as scheduled. If the defendants then appeared at trial without counsel, they would have done so at their own peril.

The district court in this case did not follow this approach. Rather, it directed its order solely to counsel. Although the court had the right to order counsel to keep it informed of the progress of the *Meros* trial and of the likelihood that they would or would not be available for trial on June 17, the court's reliance on an order solely directed to counsel was insufficient to assure that trial would begin as scheduled. In an attempt to guarantee that trial would begin on June 17, the court exceeded its lawful power by ordering appellants to secure substitute counsel if they were unable to appear for trial.

Because we conclude that the district court's May 17 order was invalid, the appellants' contempt adjudications are

REVERSED.

---

17. *See infra* note 4 and accompanying text.

18. The *Boomhower* court had determined that the interests of justice required the joint trial, without further delay, of all the defendants in the case.