**Mark KRASNOW, Plaintiff–Appellee,**

v.

**Nick NAVARRO, Sheriff of Broward Co., Robert Butterworth, Attorney General State of Florida, Defendants–Appellants.**

**No. 89–5513.**

United States Court of Appeals, Eleventh Circuit.

Aug. 17, 1990.

452

Richard L. Polin, Asst. Atty. Gen., Dept. of Legal Affairs, Miami, Fla., for defendants-appellants.

Robert L. Bogen, Braverman & Bogen, Boynton Beach, Fla., for plaintiff-appellee.

Before FAY, Circuit Judge, RONEY [*], Senior Circuit Judge, and PITTMAN [**], Senior District Judge.

RONEY, Senior Circuit Judge:

The State of Florida and the Sheriff of Broward County appeal the district court's grant of habeas corpus relief to an attorney who had been convicted of criminal contempt of court for failing to appear at a state trial without giving prior notice. We reverse.

Early in 1986, attorney Mark Krasnow was representing the defendant in *State of Florida v. McFadden,* No. 85–13563CF (17th Cir. Broward County). By specific order of State Circuit Judge Mark A. Speiser, the case was set for trial on February 24. When the appointed day came, neither Krasnow nor his client appeared in court. Instead, Krasnow sent another attorney to appear in his place—not for the purpose of trying the case—but merely to inform the court that Krasnow was involved in a federal trial and to request a continuance. The attorney Krasnow sent was not prepared to try the case. On February 26, Krasnow filed an affidavit explaining the reasons for his non-appearance.

On October 23, 1986, the state trial court issued a rule to show cause why Krasnow should not be held in contempt. After an evidentiary hearing on December 18, 1986, the court entered a written order of contempt finding that Krasnow committed the acts specified and added: "The Court finds that [Krasnow's] conduct tended to hold this Court in disrepute, and ... impeded the orderly administration of justice in this Court." The court sentenced Krasnow to serve two consecutive weekend days in Broward County Stockade, from 8:00 a.m. to 6:00 p.m. The conviction and sentence were affirmed on appeal to Florida's Fourth District Court of Appeals.

On Krasnow's federal habeas corpus petition, the magistrate determined that the evidence was insufficient to satisfy the intent element of contempt under Florida law. The district court adopted the magistrate's conclusions and granted the writ. This appeal followed.

A writ of habeas corpus is available in federal court only in cases of constitutional error. 28 U.S.C.A. § 2254(a); *Garcia v. Perringer,* 878 F.2d 360, 361–62 (11th Cir. 1989); *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988). A due process constitutional error based on the insufficiency of the evidence to satisfy an element of the criminal contempt under state law is evaluated under the standard articulated in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979): "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson,* 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16.

■ Under Florida contempt law, the element of intent is crucial.[1] In cases like this one, where the contempt charged is a

[*] *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

[**] Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. *Florida Ventilated Awning Co. v. Dickson,* 67 So.2d 218 (Fla.1953); *Young v. Miami Beach Improvement Co.,* 46 So.2d 26 (Fla.1950); *Department of Health & Rehabilitative Services v. State,* 338 So.2d 220 (Fla.App.1976); Comment, *Contempt of Court in Florida,* 9 Miami L.Q. 281, 289–91 (1955).

violation of an unambiguous, specific court order, the intent inquiry focuses upon whether the defendant intended to do an act which clearly constituted contempt.[2] If so, the requisite intent may be inferred "from the mere doing of the act."[3]

■ The magistrate's findings fail to appreciate the fact that Krasnow was found in contempt not just for failure to appear, but for failure to give the court any notice that he would not appear or to inform the court that it would not be able to try the case that it had specifically scheduled for trial. Despite having had at least six days' notice of the state/federal calendar conflict, Krasnow did nothing to inform either judge ahead of time. A resolution of the Florida State–Federal Judicial Council regarding scheduling conflicts between state and federal courts sets forth a common-sense procedure by which attorneys can resolve conflicts such as the one Krasnow encountered here. *See* Appendix to this Opinion.

It was this intentional failure to give notice that furnished ample evidence of contumacious intent.

In finding Krasnow in contempt, Judge Speiser stated:

You weren't on vacation. The point is, you took on too much. You didn't have the courtesy to withdraw; you didn't have the courtesy to file substitution of counsel. You didn't have the courtesy to have that [federal] judge speak to me, or me to th[at] judge.

The colloquy at oral argument of this appeal failed to develop any reason why Krasnow could not have informed the trial court that he would not be present on the scheduled date. Krasnow attributed his failure to give notice to his participation in a Miami federal trial before visiting U.S. District Judge L. Clure Morton. The following exchange took place during oral argument:

Judge Fay: Is there anything in the record as to what hours Judge Morton was keeping?

Krasnow's counsel: [Krasnow] says nine to five.... I believe he said it at the hearing on the [order to] show cause.

Judge Fay: Any breaks for lunch?

Krasnow's counsel: Any breaks for lunch? Yes. [Krasnow] didn't say it specifically but I would assume [Judge Morton would] break for lunch. I'm not going to contest that Judge Morton was not breaking for lunch. I—

Judge Fay: Any recesses throughout the day?

Krasnow's counsel: I don't know about recesses throughout the day but certainly a lunch break I wouldn't contest. I would assume that Judge Morton had a lunch break. ....

Despite his continued involvement in the federal trial, Krasnow was able to find time two days after his failure to appear to file an affidavit in the state court giving reasons for his absence.

Thus the principal findings upon which the magistrate based the conclusion that there was insufficient evidence to prove intent miss the mark. *First*, the magistrate found that Krasnow's participation in the federal trial rendered him unable to appear personally in state court. The reasons for his non-appearance are irrelevant, however, when the key to contumacious conduct is the failure to notify. Our recent rejection of a similar contention bears repeating here:

Finally, appellant argues that a hearing was necessary prior to his being held in contempt in order to provide him with an opportunity to show the religious importance of his absence. Such a showing was irrelevant, however, given the fact that the court accepted appellant's allegations of religious law and his sincerity in following his religion. Moreover, appellant was not held in contempt because

---

2. *Wilson v. Joughin,* 105 Fla. 353, 141 So. 182, 182 (1932); *Rowe v. Wille,* 415 So.2d 79, 81 (Fla.App.1982); *Brugh v. Savings & Profit Sharing Pension Fund,* 205 So.2d 322, 323 (Fla.App. 1967).

3. 11 Fla.Jur.2d *Contempt* § 17 (1979) (citing cases); *accord State ex rel. Franks v. Clark,* 46 So.2d 488 (Fla.1950); *Baumgartner v. Joughin,* 105 Fla. 335, 141 So. 185 (1932); *Brugh,* note 2, *supra,* 205 So.2d at 323.

he chose to exercise his religious beliefs; rather, the contemptuous acts flowed from appellant's failure to give the court adequate notice of his inability to appear.... This situation is similar to one that recently confronted the Fifth Circuit when a state legislator, who was acting as defense counsel in a criminal trial, did not appear for trial because he was attending a legislative session. *United States v. Onu*, 730 F.2d 253 (5th Cir.), *cert. denied*, 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984). The Fifth Circuit found that the importance of appellant attending the legislative session was irrelevant. The court stated:

> Requiring a lawyer to adhere to the proper orders of a federal court does not threaten legislative integrity. Senator Washington was not called suddenly to his legislative duties; the federal case was not precipitately assigned for trial. From the time he sought to enter an appearance in the case, in March, Washington knew or should have known of the trial date and of the scheduled, regular legislative session. He had ample time to communicate with the court in person and to seek an alternate trial date.

*Id.* at 257. *Cf. United States v. Lespier*, 558 F.2d 624, 627–28 (1st Cir.1977) (lawyer's failure to appear because he was at a political conference, without taking 'the smallest step of giving notice earlier,' would have been 'clearly punishable as criminal contempt').

*United States v. Baldwin*, 770 F.2d 1550, 1557 (11th Cir.1985), *cert. denied sub nom. Jackson v. United States*, 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986).

*Second*, the magistrate found that Krasnow's sending of another attorney to request a continuance was "the only viable and lawful choice available" in light of *United States v. Koblitz*, 803 F.2d 1523 (11th Cir.1986). The reliance on *Koblitz* misinterpreted this Court's opinion. The magistrate's Report and Recommendation stated:

> [Because of the ongoing federal trial,] it is clear that petitioner could not comply with the court's order to appear personally and to try the [state] case. The alternative suggested by the [state] court, that he obtain substitute counsel for his client, was not a constitutional or ethical option under the holding of *Koblitz, supra*. The option selected by the petitioner, to retain another attorney to appear at the trial call to request a continuance, appears to have been the only viable and lawful choice available.

*Koblitz* did not hold that it is unethical or unconstitutional for an attorney who has a scheduling conflict to arrange, in consultation with the client, for the client's court matter to be covered by another attorney. What *Koblitz* held was that a court *could not direct attorneys* to obtain substitute counsel for their clients without regard to, or against the expressed wishes of, the clients. 803 F.2d at 1528–29. The state judge made no such order in this case. The court's mention of the substitute-counsel option came at the show-cause hearing, well after the events giving rise to the contempt conviction, and was merely one of a litany of choices that the court cited as having been available to petitioner at the time of his offending conduct.

*Third*, the magistrate found that Krasnow's conduct caused no undue burden to the bench, bar or public, given the non-serious nature of the state case and its subsequent disposition by plea, and *fourth*, that even if Krasnow had provided advance notice of the conflict, the result would have been the same: the state case would have been continued. These findings fail to recognize that a court's time is a precious commodity of limited quantity. Other litigators could have used the time allocated for this trial had Krasnow notified the court when he first knew that he could not be present. The magistrate's reliance on the "minor" nature of the state case and its "inevitable" continuance does not address the burden to the administration of justice when a scheduled matter must be postponed at the last minute. In any event, the magistrate failed to properly weigh the fact that here the contempt charge amounted to a willful violation without notice of a specific court order. *See United States v.*

*Burstyn,* 878 F.2d 1322, 1324 (11th Cir. 1989).

In citing Florida cases that reversed contempt convictions for lack of intent, the magistrate and district court overlooked salient differences between what Krasnow did and what attorneys in those cases had done to ensure that their court responsibilities would be covered in their absences. For example, *Bailey v. State,* 460 So.2d 525 (Fla.App.1984), *Thompson v. State,* 427 So.2d 341 (Fla.App.1983), *Thomson v. State,* 398 So.2d 514 (Fla.App.1981), and *Litus v. McGregor,* 381 So.2d 757 (Fla.App. 1980), each involved attorneys who did *far more* to assure that their cases would be covered in their absence than Krasnow did here. In *Bailey* and *Thompson,* the attorneys (1) had obtained substitute counsel, (2) were justifiably confident that substitute counsel would be fully prepared to handle the case, and (3) had cleared the entire arrangement with the clients. In *Thomson,* the attorney had negotiated his client's plea and had arranged for the plea's entry to be covered. In *Litus,* the attorney arranged for his associate, "an attorney familiar with the case," to handle the scheduled hearing. 381 So.2d at 758. *See* Annotation, *Attorney's Failure to Attend Court, or Tardiness, as Contempt,* 13 A.L.R. 4th 122 (1982).

Krasnow failed to establish any constitutional reason for the federal court's interference with the state court judgment in this case.

REVERSED.

### APPENDIX

*Resolution of the Florida State–Federal Judicial Council Regarding Calendar Conflicts Between State and Federal Courts*

*Whereas,* the great volume of cases filed in the state and federal courts of Florida creates calendar conflicts between the state and federal courts of Florida which should be resolved in a fair, efficient and orderly manner to allow for judicial efficiency and economy; and

*Whereas,* the Florida State–Federal Judicial Council which represents the Bench and Bar of the State of Florida believes that it would be beneficial to formally agree upon and publish recommended procedures and priorities for resolving calendar conflicts between the state and federal courts of Florida;

*Now, therefore, be it resolved:*

In resolving calendar conflicts between the state and federal courts of Florida, the following case priorities should be considered:

1. Criminal cases should prevail over civil cases.

2. Jury trials should prevail over non-jury trials.

3. Appellate arguments, hearings and conferences should prevail over trials.

4. The case in which the trial date has been first set should take precedence.

Where an attorney is scheduled to appear in two courts—trial or appellate, state or federal—at the same time and cannot arrange for other counsel in his or her firm or in the case to represent his or her client's interest, the attorney shall give prompt written notice to opposing counsel, the clerk of each court, and the presiding judge of each case, if known, of the conflict. If the presiding judge of a case cannot be identified, written notice of the conflict shall be given to the chief judge of the court having jurisdiction over the case, or to his or her designee. The judges or their designees shall confer and undertake to avoid the conflict by agreement among themselves. Absent agreement, conflicts should be promptly resolved by the judges or their designees in accordance with the above case priorities.

In jurisdictions where calendar conflicts arise with frequency, it is recommended that each court involved consider appointing a calendar conflict coordinator to assist the judges in resolving calendar conflicts by obtaining information regarding the conflicts and performing such other ministerial duties as directed by the judges.

**456**

Adopted January 26, 1985, in Miami, Florida. *Reprinted in* 12 Fla.Bar News 1 (March 1, 1985).