## VIRGIN ISLANDS HOUSING AUTHORITY, Appellant,

v.

## Kathleen DAVID.

### No. 86–3304.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) May 1, 1987.

Decided July 10, 1987.

George H. Hodge, Jr., Charlotte Amalie, St. Thomas, V.I., for appellant.

John L. Maduro, Charlotte Amalie, St. Thomas, V.I., for appellee.

Before SEITZ, HIGGINBOTHAM and ROSENN, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

This appeal challenges the district court's dismissal of a public landlord's action to evict a tenant. Because the district court's dismissal was premised upon the oral misrepresentations of appellee's attorney, we will reverse and remand, with directions to the district court to review the merits of the eviction judgment against the tenant and to consider the imposition of sanctions against appellee's attorney.

## I.

Appellee Kathleen David has leased an apartment in the Warren E. Brown Apartments, which are owned and operated by appellant, the Virgin Islands Housing Authority ("the Housing Authority"), since November 6, 1981. In early 1985,[1] the Housing Authority sought to terminate David's lease. It claims that David interfered regularly with the rights of neighboring tenants by, for example, causing floods and fires in her building, making loud noises at odd hours, and dropping human feces in unspecified inappropriate places.

The Housing Authority subsequently filed an action for forcible entry against David in the Territorial Court of the Virgin Islands. David moved to dismiss this action on the grounds that the Housing Authority had failed to hold a private conference with her, as provided by section 9 of her lease,[2] and to grant her a grievance hearing, as provided by section 10 of her lease.[3] After a hearing, the territorial court on April 30, 1985, denied David's motion to dismiss. The territorial court was apparently persuaded by witnesses for the Housing Authority who testified that, "whenever they tried to talk to [David] about [problems and the complaints from other tenants], she just rejected them, ignored them, was rude to them, and so forth." Assessing "the direct conflict of the evidence," the territorial court made this finding:

> ... I find for the [Housing Authority] and deny the motion, that there was not an exertion of administrative remedies. It would be ridiculous to say that rule must be complied with when the exertion of the administrative remedy was prevented by the person for whom the benefit was created. That rule was created for the benefit of the [tenant]. And, if the [tenant] prevented it from taking place, [she] cannot be heard now to come in and say that because of the fact that it didn't take place, although she prevented it from taking place, that the [Housing Authority is] precluded from coming into court and applying for the judicial forum to get relief. So, I deny that motion.

The case was then heard on the merits, and the territorial court entered a judgment of

1. The Housing Authority claims to have slipped a termination notice under David's door sometime prior to January 4, 1985. David claims that she received no such notice until January 14, 1985.

2. Section 9 provides that,

   [i]f management should elect to terminate this lease, Tenant must be told in a private conference, by a duly authorized representative of Management, the reason(s) for the eviction, and must be given an opportunity to make such reply or explanation as [s/]he may wish. At the time of the conference, Tenant must be informed of:

   a. The specific reason for the proposed eviction and the alleged facts upon which it is based; and
   b. His [or her] right to request a hearing upon the proposed eviction in the manner provided by Section 10 of the lease.

3. Section 10 creates a "GRIEVANCE PROCEDURE. All grievances or appeals arising under this lease shall be processed and resolved pursuant to the grievance procedure of Management [that] is in effect at the time such grievance or appeal arises, which procedure is posted in the Project office and incorporated herein by reference." The record and briefs before us do not indicate whether a grievance procedure was offered by the Housing Authority in early 1985.

eviction against David, which it stayed pending appeal.

Pursuant to 48 U.S.C. § 1613a(a) (Supp. III 1985), David appealed the decision of the territorial court to the district court. The proceedings there were a bit one-sided; because the Housing Authority "did not deign to file a brief," the district court did not permit the Housing Authority's appearing counsel to participate in oral argument.[4] *David v. Virgin Islands Housing Auth.*, No. 85–273, judgment order at 1 (D.V.I. Apr. 23, 1986). Before the district court, David's attorney, John L. Maduro, made the following representation:

> MR. MADURO: No, the Territorial Court just denied the motion. As a matter of fact, the Territorial Court did not make any findings and conclusions. [Sentence inaudible.]
>
> JUDGE O'BRIEN: But she's entitled to an administrative hearing before she's [words inaudible].
>
> MR. MADURO: No. He didn't mention that at all. He made no finding.

The district court thereafter made this finding:

> From the brief submitted and the argument of the [tenant], it is clear that the provisions of the grievance procedure spelled out in Paragraph 10 of the lease between the parties were not complied with. Upon notice to vacate, [she] sought to invoke these procedures. Her attempt was ignored. She was entitled to the benefit of whatever administrative procedures were included in her lease, before action to terminate the lease was initiated.

*David*, No. 85–273, judgment order at 1–2 (D.V.I. Apr. 23, 1986). Accordingly, the district court reversed the judgment of the territorial court, remanding the case to it with instructions to dismiss without prejudice the Housing Authority's complaint.

Our jurisdiction to consider the Housing Authority's appeal is conferred by 28 U.S.C. § 1291 (1982) and by 48 U.S.C. § 1613a(c) (Supp. III 1985).

II.

There is no dispute that David's attorney, Maduro, misrepresented the territorial court's decision in his argument to the district court, and that such conduct, if done intentionally, is wrong. *See, e.g., Nix v. Whiteside*, 475 U.S. 157, ——, 106 S.Ct. 988, 994, 89 L.Ed.2d 123 (1986) ("counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law"); *In re Curl*, 803 F.2d 1004, 1005–06 (9th Cir. 1986) ("A lawyer's duty to an appellate court consists in more than not putting false evidence before the court.... [It is] a duty not to misrepresent the evidence in argument before the court."); *In re Phelps*, 637 F.2d 171, 180 (1st Cir.1981) (affirming two-year suspension of attorney who "stated unjustified conclusions in [his] motion for a new trial"); *United States v. Temple*, 349 F.2d 116, 117 (4th Cir.1965) ("Lying to a judge is certainly misbehavior ... and therefore punishable [as contempt] under [18 U.S.C. § 401(1) (1982) ]."). It is also clear to us that the district court based its dismissal order on "the brief submitted and the argument of [Maduro]." *David*, No. 85–273, judgment order at 1 (D.V.I. Apr. 23, 1986). The only real question we confront is remedial: on direct appeal from a judgment premised on a party's misrepresentation, what corrective actions may an appellate court undertake?[5]

Under Rule 60, an explicit saving clause empowers each federal court "to set aside a judgment for fraud upon the court." **Fed.R.Civ.P.** 60(b); *see generally Averbach v. Rival Mfg. Co.*, 809 F.2d 1016, 1022 (3d Cir.) (Rule 60(b) recognizes "the court's

---

4. We have not assessed the propriety or wisdom of the district court's decision to deny oral argument to the party that failed to file a responsive brief, for that harsh measure has not been challenged on appeal. We do note, however, that the resulting absence of opposition made it more essential than usual that David's attorney be truthful, accurate and even-handed in his argument to the district court, and that the

district court detect any failure to meet such a standard.

5. We note that the briefs of both parties to this appeal do not present this question. In general, they have been of very little help to our resolution.

inherent power to grant relief even when equitable principles might bar a party from such relief"), *petition for cert. filed*, 55 U.S.L.W. 3875 (U.S. June 30, 1987) (No. 86–1895); *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1074 n. 1 (2d Cir.1972) ("a finding of fraud on the court empowers the district court to set aside the judgment *sua sponte* "); *Root Ref. Co. v. Universal Oil Prods. Co.*, 169 F.2d 514, 522 (3d Cir.1948) ("[t]he power inheres in the appellate as well as in the trial court"), *cert. denied sub nom. Universal Oil Prods. Co. v. William Whitman Co.*, 335 U.S. 912, 69 S.Ct. 481, 93 L.Ed. 444 (1949). This provision codifies "the historic power of equity to set aside fraudulently begotten judgments." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245, 64 S.Ct. 997, 1000, 88 L.Ed. 1250 (1944) (*"Hazel-Atlas"*). Leading commentators have suggested that the concept of fraud upon the court "should ... embrace only that species of fraud [that] does[,] or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases...." 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 60.33, at 60–360 (2d ed. 1985); *accord H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir.1976) ("Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court."); *cf. Nix*, 475 U.S. at ——, 106 S.Ct. at 998 ("an ethical lawyer [i]s an officer of the court and a key component of a system of justice, dedicated to a search for truth"). Accepting that view of the concept, we believe that Maduro's argument perpetrated fraud upon the district court, and we treat this appeal as a plea for relief under Rule 60(b).

In *Hazel-Atlas*, the Supreme Court held that our Court of Appeals should set aside its judgment, begotten by fraud, and order the perpetrator's action dismissed. *See* 322 U.S. at 248–50, 64 S.Ct. at 1002–03. Our holding here is analogous because the misrepresentation—whether caused by fraud or by a callous disregard of the territorial court record—was pernicious; we will reverse the district court's judgment and order it to deny David's motion to dismiss. On remand, we will direct the district court to pass upon the merits of David's appeal from the territorial court judgment. In addition, we direct the district court to consider imposing sanctions against Maduro.[6] "If our adversary system is to function according to design, we must assume that an attorney will observe his [or her] responsibilities to the legal system, as well as to [the] client."[7] *Geders v. United States*, 425 U.S. 80, 93, 96 S.Ct. 1330, 1337, 47 L.Ed.2d 592 (1976) (Marshall, J., joined by Brennan, J., concurring).

**6.** David's brief claims, *inter alia,* that the misrepresentation by Maduro was accidental, that its impact is mitigated by the Housing Authority's failure to file a brief in the district court, and that the district court had (and, impliedly, that it failed to read) the transcript of the territorial court's findings at the time the district court granted David's motion to dismiss. We leave arguments in Maduro's defense for the district court's consideration. *Cf. United States District Court for the District of New Jersey v. Abrams*, 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975) ("It has always seemed clear to me that the federal courts have plenary power over the admission, disbarment or discipline of attorneys who practice before them.") (Burger, C.J., joined by Powell, J., dissenting from denial of certiorari); *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir.1984) ("one of the inherent powers of any federal court is the ... discipline of attorneys practicing before it"); *H.K. Porter Co., Inc.*, 536 F.2d at 1122 ("an experienced trial judge ... [is] in the best position to know" whether fraud has been perpetrated on his or her court); *In re Abrams*, 521 F.2d 1094, 1099 (3d Cir.) (it is an "unquestioned principle that [a] District Court ..., like all federal courts, has the power ... to discipline attorneys who have been admitted to practice before that court"), *cert. denied sub nom. United States District Court for the District of New Jersey v. Abrams*, 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975).

**7.** "[Z]ealous advocacy should not mean unbounded advocacy. Counsel's role must to some extent be defined to reflect the basic purpose of the adversary system as a means of promoting the discovery of truth, ... [and] the women and men who comprise the bar must remember their obligations as officers of the court." Meese, *Promoting Truth in the Courtroom,* 40 Vand.L.Rev. 271, 280–81 (1987).

## III.

For the foregoing reasons, we will reverse the judgment of the district court. On remand, the district court will deny David's motion to dismiss, address the merits of her appeal, and consider imposing sanctions upon attorney Maduro.