842 F.2d 1408
 UNITED STATES of America
v.
Anthony ACCETTURO et al.
Appeal of Matthew P. BOYLAN and Lowenstein, Sandler, Kohl,
Fisher & Boylan.
Douglas L. WILLIAMS, Esq., Petitioner,
v.
Hon. Harold D. ACKERMAN, United States District Judge In and
For the District of New Jersey, Respondent.
UNITED STATES of America
v.
Anthony ACCETTURO.
Appeal of Douglas L. WILLIAMS.
 Nos. 88-5155, 88-5159 and 88-5160.
 United States Court of Appeals,
Third Circuit.
 Argued March 8, 1988.
Decided March 9, 1988.
Rehearing and Rehearing In Banc
Denied March 21, 1988.
 
 Douglas L. Williams (argued), Miami, Fla., pro se.
 James D. Crawford (argued), Philadelphia, Pa., for amicus, Anthony Accetturo.
 Samuel A. Alito, Jr. (argued), U.S. Atty., Joseph G. Braunreuther, Asst. U.S. Atty., Barbara Miller, V. Grady O'Malley, Sp. Attys., U.S. Dept. of Justice, Newark, N.J., for appellee.
 Theodore V. Wells, Jr. (argued), Robert L. Krakower, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, N.J., for appellants, Lowenstein, Sandler, Kohl, Fisher & Boylan, in No. 88-5155.
 Alan L. Zegas, West Orange, N.J., for appellant, Matthew Boylan, in No. 88-5155.
 Before SLOVITER, MANSMANN and SCIRICA, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 In one of the two appeals before us, Matthew P. Boylan, a New Jersey attorney, and the law firm of Lowenstein, Sandler, Kohl, Fisher & Boylan (Lowenstein), in which Boylan is a partner (hereafter jointly referred to as "Boylan"),[1] appeal from the order of the United States District Court for the District of New Jersey, entered February 29, 1988, holding them in contempt for refusing to assume the representation of defendant Anthony Accetturo in an ongoing criminal trial and imposing civil sanctions upon them for refusing to do so. In the second appeal, Douglas L. Williams, a Florida attorney, appeals from a similar order as to him entered March 1, 1988, holding him in contempt and imposing similar sanctions. Williams also filed an "Alternative Emergency Petition(s) for Writ(s) of Prohibition, Mandamus and Commonlaw Certiorari" arising out of the same matter. We expedited the appeals and heard oral argument on the merits as soon as the government's response was received.[2]
 
 I.
 The Facts
 
 2
 Defendant Anthony Accetturo was indicted by a grand jury of the United States District Court for the District of New Jersey, along with twenty-five other co-defendants, in August 1985 for, among other things, conspiring to violate the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. Sec. 1962(d) (1982). On September 13, 1985, attorney Milton Ferrell, Jr. (Ferrell, Jr.) filed a notice of appearance for defendant Anthony Accetturo. On the same day, appellant Matthew Boylan also filed a notice of appearance which stated, "[y]ou are hereby notified that I appear as Local Counsel to Milton Ferrell, trial counsel, the defendant in the above-entitled matter." App. at 2. Simultaneously with his notice of appearance, Boylan sent a letter to Judge Harold A. Ackerman, to whom the case was assigned, which stated in part:
 
 
 3
 Please be advised that we have been retained by Anthony Accetturo to serve as local counsel in conjunction with Milton M. Ferrell, Jr., chief counsel and trial counsel for the defendant, Accetturo, in the above captioned matter. We intend to be available to coordinate all pending motions with other New Jersey counsel and to take the necessary steps to protect the interest of Mr. Accetturo up to the time when this matter goes to trial, at which point Mr. Ferrell will conduct the trial of this matter.
 
 
 4
 App. at 5.
 
 
 5
 During the fourteen months of pre-trial preparation, Ferrell, Jr. and/or Boylan made numerous motions on behalf of Accetturo related to procedural or substantive matters, including a motion to suppress. On November 16, 1986, the day the trial of Accetturo and more than twenty co-defendants commenced, Boylan moved for the admission pro hac vice of Milton Ferrell, Sr. (Ferrell, Sr.), the father of Ferrell, Jr., to serve as trial counsel for Accetturo. No other counsel appeared for Accetturo during the fifteen month period the proceeding has stretched on, which is still in the midst of the prosecution's presentation of its case.
 
 
 6
 On February 16, 1988, when the trial resumed following a four-day holiday weekend, Accetturo notified the court that Ferrell, Sr. had taken ill and was diagnosed as having advanced terminal cancer requiring his immediate hospitalization. Accetturo thereafter filed a severance motion which was argued by special counsel on February 24, 1988. Counsel explained that Accetturo's objection was not to either Ferrell, Jr. or Boylan as his counsel, and that Accetturo "will take any qualified counsel who has an adequate time, given the context of this case, to prepare a defense." App. at 36. It was, however, Accetturo's position that no counsel "could step into this case within a reasonable period of time and ... give the adequate assistance of counsel that the constitution requires." Id. at 37.
 
 
 7
 Boylan filed an affidavit in which he averred that he spent 43.4 hours on Accetturo's case and that an associate of his spent 18.5 hours during the pretrial period; that he had no substantive involvement; that he provided research and advice on New Jersey law; that he met with Accetturo and Ferrell, Jr. before the arraignment; that he appeared at Accetturo's bail hearing and participated in his appeal to this court from the denial of bail; but that he "played no role whatsoever in the defense of the case," and that his participation had ceased with the commencement of the trial, except for his receipt of some papers served on him for the first month and a half of the trial. App. at 7-9. Boylan reiterated these facts before the court at the hearing on February 24, 1988. App. at 75-76.
 
 
 8
 On the following day, February 25, 1988, Douglas Williams appeared before the court, having flown in from Miami at the court's request. Williams stated that Ferrell, Jr. and Ferrell, Sr. had not practiced law together since 1982; that Ferrell, Jr. and Williams became partners in July 1987; that he had never seen Accetturo; that he had commitments in other criminal cases, some of which he specified, scheduled to begin in March or April; and that he has no "familiarity with any aspect of these proceedings whatsoever." App. at 114. Counsel for Williams argued that the district court had no power to require Williams to represent Accetturo under these circumstances.
 
 
 9
 The court denied Accetturo's motion for severance. The court concluded "that the day-to-day conduct of the defense during the 15 months of trial owed much to [Ferrell, Jr.'s] conduct of the defense during the 14 months of pretrial." App. at 155. Nonetheless, the court did not order Ferrell, Jr. to New Jersey at this time so that he could remain with his father, but ordered him to resume his representation of Accetturo "as soon as he is available." App. at 21, 155. The court ordered that Boylan, as "counsel of record for defendant Accetturo in this case," immediately assume the position of "lead" defense counsel for Accetturo and that Boylan's firm, Lowenstein, assist him in that defense. The court further ordered Williams to assist Boylan as counsel for Accetturo until relieved by written order of the court; that Williams "shall assume said responsibility immediately;" that Williams "shall be the liaison of Mr. Ferrell, Sr. and Mr. Ferrell, Jr. with the Court and with counsel for all other parties in the above-captioned case." App. at 20-21.
 
 
 10
 The court gave the attorneys twenty-four days to prepare to defend Accetturo and set March 21, 1988 as the date for the resumption of the trial. The court denied Boylan's motion for a stay so that he could appeal. The court ordered the government to cooperate fully with defense counsel.
 
 
 11
 On February 26, 1988, Boylan and a representative of the Lowenstein firm appeared before the court to notify it that neither would comply with the court's order to take up the representation of Accetturo and to request a reconsideration of the court's order. The motion for reconsideration was denied. The government then moved to have Boylan and the Lowenstein firm held in civil contempt. On February 29, 1988, the court ordered that both be held in contempt of the court's order and imposed fines of $2,500 per day on Mr. Boylan and $10,000 per day on the Lowenstein firm, both to commence immediately. Boylan appealed, and this court stayed that order on the same day.
 
 
 12
 On March 1, 1988, Williams appeared before the court and notified it that he also would not comply with the court's order to undertake the representation of Accetturo. The court then found Williams in contempt and imposed penalties of $2,500 a day, although the enforcement of the fine was stayed. Williams filed, inter alia, a petition for a writ of mandamus, and at his request this court granted a stay of the order of contempt on March 3, 1988. Williams thereafter filed a notice of appeal from the contempt order.II.
 
 
 13
 It is first necessary for this court to set forth precisely what issues are properly before us.
 
 
 14
 An order holding a non-party in civil contempt is immediately appealable. See United States v. Rogers Transportation, Inc., 793 F.2d 557, 557 (3d Cir.1986); In re Grand Jury, 836 F.2d 150, 150 (3d Cir.1987). See generally 9 J. Moore & B. Ward, Moore's Federal Practice para. 110.13(4) (1987). The contempt orders here, intended to coerce the attorneys into compliance with the court's prior orders, are archetypically civil. See McDonald's Corp. v. Victory Investments, 727 F.2d 82, 86-87 (3d Cir.1984). Therefore, we have jurisdiction over the appeals of Boylan and Williams.
 
 
 15
 These appeals raise two questions: (1) whether the district court has the power to require an attorney to undertake representation of a criminal defendant in the middle of a criminal trial, see United States v. Koblitz, 803 F.2d 1523, 1527 (11th Cir.1986) (reviewing court must determine if underlying order was valid and lawful), and (2) if so, whether such an order can be upheld as to the appellants in this case. Our review over the first issue, which raises a question of law, is plenary, See Remington-Rand Corp. v. Business Systems, 830 F.2d 1256, 1257-58 (3d Cir.1987). Our review over the second issue is whether the district court abused its discretion. Delaware Valley Citizens' Council v. Pennsylvania, 678 F.2d 470, 478 (3d Cir.), cert. denied, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982).
 
 
 16
 We cannot on this appeal consider any claim by amicus Accetturo that the court's orders denying his motion for a severance or directing Boylan and Williams to serve as Accetturo's counsel during the remainder of the trial affected his due process rights, deprived him of effective assistance of counsel, or otherwise prejudiced him. Accetturo's contentions in these respects can be raised by him at the conclusion of the criminal proceedings. Although Accetturo argues that a new trial would not provide an effective remedy, a similar argument was rejected by the Supreme Court in Flanagan v. United States, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). In Flanagan, the Court held that an order disqualifying counsel of the defendant's choice was not immediately appealable. Instead, the Court explained that "postconviction review of a disqualification order is fully effective." Id. at 267, 104 S.Ct. at 1056. We cannot meaningfully distinguish Accetturo's objection to having counsel appointed at this time from the other orders relating to counsel which the Court held were effectively reviewable on appeal from a final judgment. Thus, we confine ourselves to the contentions raised by Boylan and Williams.
 
 III.
 
 17
 In Powell v. Alabama, 287 U.S. 45, 73, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932), the Supreme Court set forth the relationship between a court and the attorneys who practice before it, stating: "Attorneys are officers of the court, and are bound to render service when required by such an appointment." The Court explained that the right to have counsel appointed is the logical corollary of a defendant's right to be heard by counsel, a right secured by the Sixth Amendment. Id. at 68-72, 53 S.Ct. at 63-65. Thereafter, in a series of cases, courts have upheld their inherent power to appoint counsel, sometimes even over counsel's objection, to represent defendants in need of such representation. See, e.g., Williamson v. Vardeman, 674 F.2d 1211, 1214 (8th Cir.1982); United States v. Dillon, 346 F.2d 633, 635-36 (9th Cir.1965), cert. denied, 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966).
 
 
 18
 Although the issue has arisen primarily when defendants have been indigent, the Advisory Committee Notes to Fed.R.Cr.P. 44(a) recognize the courts' power to appoint counsel for non-indigent defendants as well. See Fed.R.Cr.P. 44, Advisory Committee Note, 1966 Amendment ("The right to assignment of counsel is not limited to those financially unable to obtain counsel."). The district court relied on the Advisory Committee Note as one of the bases for its power to appoint counsel in this case. App. at 151.
 
 
 19
 In United States v. Dillon, 346 F.2d at 635, the court stated that "representation of indigents under court order, without a fee, is a condition under which lawyers are licensed to practice as officers of the court." Accordingly, the court rejected the contention that an appointment to represent an indigent without compensation constituted a "taking" in the constitutional sense of counsel's services. The court held there was no unconstitutional taking when counsel "performs an obligation imposed upon him by the ancient traditions of his profession and as an officer assisting the courts in the administration of justice." Id. at 636; see also Williamson, 674 F.2d at 1214 ("Attorneys may constitutionally be compelled to represent indigent defendants without compensation.").
 
 
 20
 In the case before us, there has been no suggestion that Accetturo is indigent. Therefore, we need not decide whether the court could appoint counsel without compensation. Instead, we must focus on whether the court's undoubted power to appoint counsel for a criminal defendant in need of such counsel is negated because the trial in which counsel is required has been underway for some time.
 
 
 21
 No reported opinion on this issue has been called to our attention. In the only case cited to us by any of the counsel, United States v. Badalamente, S.S. 84 CR. 236 (PNL) (S.D.N.Y. Sept. 18, 1986) (unreported), the district court of New York faced a similar issue. In that case, defendant's attorney became sick after the presentation of the government's evidence had consumed seven and a half months. Although the trial was also one involving multiple defendants with an allegedly complex core conspiracy, the district court held that it had the power to compel an attorney, over his objections, to proceed to represent the defendant.
 
 
 22
 There is a symbiotic relationship between the court and the attorneys who are members of its bar. The court's responsibility for the administration of justice would be frustrated were it unable to enlist or require the services of those who have, by virtue of their license, a monopoly on the provision of such services. Attorneys who have the privilege of practicing before the court have a correlative obligation to be available to serve the court. Therefore, we cannot conclude that the court's inherent power to appoint counsel when necessary in a criminal case evaporates merely because there is a need for counsel during, rather than before, the trial proceedings.
 
 IV.
 A.
 
 23
 We turn then to the question whether the district court's exercise in this case of the power to appoint counsel during a trial constituted such an abuse of discretion under the extenuating circumstances presented here as to require us to vacate the orders of civil contempt. We consider first Boylan's argument that the order requiring him to represent Accetturo at this time would compel him to violate his professional and ethical obligations to give Accetturo effective assistance of counsel. The Rules of Professional Responsibility mandate that a lawyer shall provide "competent representation," which "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Model Rules of Professional Conduct Rule 1.1 & comment; cf. Model Code of Professional Responsibility DR 6-101 (lawyer shall not handle a matter s/he is not competent to handle or without making "preparation adequate in the circumstances").
 
 
 24
 In this case, Boylan's competence as a criminal lawyer is unquestioned. Moreover, the trial court, who was intimately familiar with the proceedings to date, specifically found that "24 days ... would provide all counsel ... enough time to effectively prepare for the resumption of trial." App. at 162; see id. at 158-59. We cannot conclude that, with respect to Boylan, that finding is clearly erroneous.
 
 
 25
 Although there have been 27,000 pages of transcript for these proceedings, 7,000 or 8,000 involved voir dire of the jury, and numerous others concern continuances, scheduling, and other non-substantive matters. The court stated that the direct evidence as to Accetturo "has been relatively discreet [sic], intermittent and of small quantity." App. at 159. Although we recognize that substitute counsel must review all the testimony and exhibits, not only those relating to Accetturo, there is no basis at this time to conclude that 24 days to prepare is per se unreasonable. This is, therefore, unlike the case of United States v. Tramunti, 513 F.2d 1087, 1116-18 (2d Cir.), cert. denied, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975), where the court found that the trial court had erred in refusing to allow counsel for the defendant a four-day continuance to prepare.
 
 
 26
 In effect, Boylan's argument is that no counsel could effectively represent Accetturo for the remainder of the trial. He argues that in a trial of this complexity, an attorney with no previous participation in the trial could not be an adequate substitute because of "the dynamics which have occurred in the courtroom among the lawyers, the judge, the witnesses and most importantly, the jury." Boylan's Brief at 33. This argument commixes Boylan's ethical responsibility with Accetturo's rights. As we stated before, the issue of the effect of the orders on Accetturo's right to effective assistance of counsel will be preserved for him for post-trial review.
 
 
 27
 Boylan also argues that obeying the court's order would require him to violate his ethical obligations to his other clients. We do not lightly discount a lawyer's responsibility to his other clients, but if a busy lawyer's obligations to them were sufficient to negate the lawyer's obligation to undertake representation when required by the court, busy lawyers would be insulated from performing this necessary service.
 
 B.
 
 28
 In making its decision that Boylan would be required to represent Accetturo, the district court referred to the following factors warranting that result: that "Boylan made his written appearance for Mr. Accetturo ... at the outset of this case," App. at 156; that as a result under Rule 5 of the local rules of the district court Boylan "has been on notice that he 'may be required to attend before the Court,' " App. at 157; that Boylan was therefore an "obvious choice[] to consider first off," App. at 153; that Boylan "appeared as counsel of choice for defendant [and] has never been allowed to withdraw," id.; that Boylan never came to the court and requested that "this Court ... relieve me of my obligations as attorney for Mr. Anthony Accetturo," App. at 199-200; that "Rule 18 of the local rules of this district court states, '... [a]fter a case has been first set for trial, substitution and withdrawal shall not be permitted except by leave of court,' " App. at 189; that the Rules of Professional Conduct also require that, " '[w]hen ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating representation,' " App. at 193 (quoting Rule 1.16(c) of the Model Rules of Professional Conduct); that the local rule of the district court requiring the entry of appearance by local counsel "is not applicable to any attorney in a criminal case" so that once Boylan entered his appearance, "the rule ... makes it clear that if he was in, he was in as one of Mr. Accetturo's attorneys," App. at 190; that "defendant would be hard pressed to find counsel who could ready themselves more quickly and efficiently than the attorneys of record," App. at 154; that "Boylan has engaged in some significant district-and appellate-court pretrial work for defendant, [and] has a familiarity with the crucial, formative pretrial stage of defendant's defense," App. at 157; that Boylan is "an outstanding criminal defense lawyer in his own right," id.; and that Boylan "has behind him the impressive resources of one of this state's larger law firms, consisting ... of 90 lawyers, including such fine criminal defense lawyers as Mr. Theodore Wells and Mr. Gerald Krovatin." Id.
 
 
 29
 It is thus apparent that even if Boylan's entry of appearance on behalf of Accetturo was limited to his acting as local counsel and participating in pre-trial proceedings, as Boylan may have reasonably believed, the district court's selection of Boylan to represent Accetturo was based as well on significant other factors. In addition, Accetturo has expressed no objection to Boylan's qualifications, and he never requested the opportunity to select other counsel in lieu of Boylan. To satisfy ourselves on this issue, we specifically asked Accetturo's appellate counsel at the oral argument whether he would like the opportunity to find counsel to replace Boylan, and were advised that Accetturo's objection was to any counsel at this time and not to Boylan as such. Cf. United States v. Koblitz, 803 F.2d 1523 (11th Cir.1986) (it is the responsibility of client, not counsel, to find substitute counsel in the first instance). Finally, Boylan as a member of the bar of the federal courts of New Jersey shares the obligation of all such members to respond to the courts' need in exigent circumstances. In light of the totality of factors considered by the district court, we cannot conclude that it abused its discretion in ordering Boylan and his law firm to proceed to prepare for the representation of Accetturo in the allotted 24 days and to undertake that representation upon recommencement of the trial.
 
 
 30
 We cannot reach the same conclusion with respect to the district court's order directing Williams to undertake Accetturo's representation. Williams, unlike Boylan, is not a member of the bar of New Jersey or of the district court, does not practice law in that state, and did not file a notice of appearance.
 
 
 31
 In deciding that Williams should also represent Accetturo, at least until Ferrell, Jr. was able to return, the court noted the following factors: that "Williams can provide, for now, a liaison to Mr. Ferrell, Jr. and Mr. Ferrell, Sr. to the extent communication is possible, and can provide what case files and institutional knowledge may be available regarding this case in Mr. Milton Ferrell, Jr.'s law firm," App. at 156; and that, in addition, Mr. Williams possessed "first-rate criminal defense skills." Id.
 
 
 32
 The district court did not rely on Florida partnership law, which is the primary basis upon which the government asks us to uphold the order as to Williams. We do not believe Florida partnership law relating to dissolution of law firms or claims by and against the partners can provide the legal basis for a court's order directing a distantly located lawyer with no prior personal connection to the litigation to step in as substitute counsel. Moreover, the factors relied on by the district court are an insufficient basis for its order. We thus conclude that the court abused its discretion in entering the order dated February 25, 1988 as to Williams, and consequently we shall reverse the contempt order as to him.[3]
 
 V.
 Summary
 
 33
 We have upheld the power of the district court to appoint substitute counsel for a criminal defendant whose counsel has become so seriously ill during a trial that he is unable to proceed. It is patent that such power should be exercised with exquisite restraint and only under the most exceptional circumstances. Accetturo preserves for post-conviction review his challenges to the exercise of the court's power in these circumstances.
 
 
 34
 We have also held that, given the totality of the circumstances here, the district court did not abuse its discretion in selecting Boylan as Accetturo's substitute counsel. Therefore, we will affirm the civil contempt order as to him and the Lowenstein firm. Obviously, on remand the court will have to readjust the schedule to give Boylan the full 24 days the court previously concluded was necessary for preparation. Because we have concluded that the court did abuse its discretion in requiring Williams to act as Accetturo's counsel, we will reverse the civil contempt order as to him.
 
 
 35
 Counsel for the appellants have alluded to the problems created by the mega-trial in criminal cases. Such objections can be raised after trial. However, our review of the record in connection with the matter before us suggests that it would be possible to proceed at a less leisurely pace than has characterized these proceedings. The responsibility for doing so must be squarely on the trial court. Although we do not suggest that continuances for the convenience of the parties (as distinguished from the court) are not appropriate, it is apparent that a more compressed trial schedule requiring early morning starts and late afternoon conclusions, and utilizing at least part of Saturday or some evenings, will significantly reduce the period necessary to bring this already protracted proceeding to its conclusion.
 
 
 36
 This case will be remanded to the district court for further proceedings consistent with this opinion.[4] The mandate shall issue forthwith.
 
 
 37
 Before SEITZ, WEIS, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, and COWEN, Circuit Judges.
 
 SUR PETITION FOR REHEARING
 
 38
 The petition for rehearing filed by appellants, Matthew P. Boylan and Lowenstein, Sandler, Kohl, Fisher & Boylan, in the above entitled case having been submitted to the judges who participated in the decision of this court and to all other available circuit judges of the circuit in regular active service, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 39
 Judges Higginbotham and Scirica would grant the petition for rehearing for the reasons set forth in their separate dissenting statements.
 
 
 40
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting.
 
 
 41
 With the accompanying order filed by Judge Sloviter, this emergency appeal departs from our Court as it arrived: on the fastest of the fast tracks.[1] Indeed, the actions of this Court lend new meaning to the phrase "federal express." The panel, having read the briefs and heard the oral arguments of the relevant parties, filed its powerful and lengthy opinion in less than thirty hours. There can be no question that everyone involved in this high-pressure process has done impressive work under difficult conditions. Courts of Appeals are not entitled to accolades, however, merely for speed in the decision-making process. It is more important that courts be right than fast when they decide critical constitutional issues. I remain unconvinced that this Court has properly decided this truly unprecedented case. Because the complicated and deeply troubling issues raised by this appeal deserve the consideration of the full Court, I respectfully dissent from the denial of appellants' petition for rehearing in banc.
 
 
 42
 Although the panel is surely correct in its legal holding that a district court has inherent authority to appoint counsel for a criminal defendant, no federal court has ever approved the exercise of this power in circumstances that even approximate the factual context of this appeal. I note that the district court's order was not premised upon evidence that the defendant, Anthony Accetturo, is attempting to delay or to derail his trial. See United States v. Bentvena, 319 F.2d 916 (2d Cir.), cert. denied sub nom. Ormento v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963); Lee v. United States, 235 F.2d 219 (D.C.Cir.1956). Everyone agrees, rather, that it is simply a tragic fortuity that terminal cancer has struck his attorney, Milton Ferrell, Sr. There is also no evidence that Accetturo desires the representation of Matthew P. Boylan, Esq., the attorney whom Judge Ackerman has drafted into service to replace Ferrell. Cf. United States v. Koblitz, 803 F.2d 1523 (11th Cir.1986) (client, not counsel, is responsible in the first instance for finding substitute counsel). The record does explicitly indicate, by contrast, that Boylan entered an expressly limited appearance to handle discrete pretrial matters,[2] that he has never served as Accetturo's trial counsel, see United States v. Badalamenti, No. SS 84 Cr. 236 (PNL), 1986 WL 10718 (S.D.N.Y. Sept. 22, 1986) and that he was not deputized by the district court to defend an indigent client. See Williamson v. Vardeman, 674 F.2d 1211 (8th Cir.1982); United States v. Dillon, 346 F.2d 633 (9th Cir.1965), cert. denied, 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966). In sum, every previous decision that is cited in the panel's opinion grew out of a factual setting that differs significantly from the one that we confront.
 
 
 43
 I believe there is nothing to be gained by suggesting that the affirmance of Judge Ackerman's order compelling Boylan to take over Accetturo's representation is not something completely different from every previous appellate decision that has gone before. In particular, two of the issues raised by the rehearing petition cause me great concern. First, Boylan and his firm note that a district court's inherent power to compel legal representation presupposes some prior showing that the criminal defendant whose defense is in question is otherwise unable to obtain counsel. See Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932) ("All that it is necessary now to decide, as we do decide, is that in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his [or her] own defense ..., it is the duty of the court, whether requested or not, to assign counsel for him [or her] as a necessary requisite of due process of law....") (emphases added). While the failure of the district court to make any such finding raises a serious possibility that its order compelling Boylan to represent Accetturo was an abuse of discretion, the panel opinion does not address this issue.[3] Second, and related, the record evidence indicating that Accetturo, at the time the district court entered its order, had the ability to obtain representation (and, indeed, that he has succeeded in doing so, at least for the purpose of arguing his severance motion, see supra note 3), makes it even more likely that the order against Boylan and his firm was an abuse of district court discretion; this argument also was not addressed by the panel.
 
 
 44
 It is also thought-provoking, at least to me, that the panel has released half of the legal team that the district court ordered to take over Accetturo's defense. The fact that Judge Ackerman, the day after ordering Boylan to defend Accetturo, still felt it necessary to order Douglas L. Williams, Esq., to join the Accetturo team, if only as a placeholder for Milton Ferrell, Jr., indicates judicial recognition of the enormity of the task that now confronts Boylan alone. In light of the reversal of the district court's order and contempt citation as to Williams, I am inclined to think that, at a minimum, this matter should have been remanded for the district court to reconsider its order against Boylan, for it is at least conceivable that the district court, now that this Court has clarified the limits of the district court's power in these circumstances, may be reluctant to force Boylan to act as counsel for Accetturo without Williams's assistance.
 
 
 45
 There is nothing in this record that suggests that Boylan has attempted to be devious or less than forthright in dealing with the district court. He appears to have an unblemished record at the bar, and the district court saturated him and his firm with superlatives.[4] I am confident that a lesser lawyer would have accepted such flattery and, in due course, capitulated to the order compelling him to take over Accetturo's defense more than two years into this prosecution (i.e., after fourteen months of pretrial preparation and fifteen months into trial), thereby avoiding the wrath that a district judge can unleash as a matter of discretion. On the other hand, I well appreciate the pressures upon district court judges. Where a case has consumed more than two years of judge and counsel time, and where the trial of that case has consumed more than one year of jury time, it is easy for some judges to view it as a "failure" when part of that case must be severed or a mistrial declared. Nevertheless, our Constitution is not so elastic that lawyers have fewer constitutional rights and diminished ethical duties to their clients in a ten-month trial than they do in a ten-day trial. It is inconceivable to me that the district court, recognizing that Accetturo has not asked Boylan to take on this representation, would nonetheless have forced the client upon Boylan if these events had taken place on the tenth day of trial. The fact that this trial is in its fifteenth month is no basis for a different outcome.[5]
 
 
 46
 Judges rarely intend to be complimentary when they take the time to announce that attorneys are "officers of the court." See e.g., page 1412 (quotingPowell, 287 U.S. at 73, 53 S.Ct. at 65); see generally Virgin Islands Housing Auth. v. David, 823 F.2d 764, 767 (3d Cir.1987) (per curiam ). Instead, that bromide is more often a signal to attorneys that the judges, perhaps reluctantly, are about to lower the proverbial boom. Yet we are all, judges and lawyers alike, officers of the court. I fear that this Court, in the situation before us, encourages an alternative view that elevates judges to the position of imperial potentates and treats lawyers as lowly serfs. In the absence of a much clearer showing in the district court, focused specifically upon Accetturo's inability to obtain legal representation, I believe that the district court abused its discretion when it held Boylan in contempt. Moreover, because this decision may have disastrous consequences for the rights of Accetturo, the interests of Boylan's preexisting clients and the vitality of the criminal defense bar in general, I am convinced that a rehearing of this matter before the full Court is warranted.
 
 
 47
 Under the penumbra of discretion, trial judges in our federal system have enormous power to define (and to curtail) the rights of citizens. It is proper that they have such broad discretion, but appellate courts exist to preclude patent abuses of that discretion. Despite my deep respect for my colleagues, in this instance I believe that they, by sanctioning the conscription of Mr. Boylan, have failed to exercise properly their obligation as appellate judges. I therefore dissent from the denial of the petition.
 
 
 48
 SCIRICA, Circuit Judge, dissenting from denial of rehearing.
 
 
 49
 This "proceeding involves a question of exceptional importance," see Fed.R.App.P. 35(a), which implicates significant constitutional considerations, and should be heard by the full court. Accordingly, I would grant rehearing in banc.
 
 
 
 [1]
 The Lowenstein law firm has not argued that it stands in any different position than does Boylan
 
 
 [2]
 At the oral argument before this court, Williams and the government agreed that the papers filed in connection with the petition for writ of mandamus etc. could be considered as applicable to the merits of Williams' appeal, No. 88-5160
 
 
 [3]
 We will therefore deny the petition for mandamus as moot
 
 
 [4]
 On remand, the district court may wish to consider whether, in the circumstances of this case of first impression, Boylan and the Lowenstein firm, should be relieved from the order of contempt
 
 
 [1]
 The district court ordered appellant Matthew P. Boylan, Esq., to take over the representation of defendant Anthony Accetturo on February 25, 1988. On February 26th, Boylan notified the district court that he refused this appointment. On February 29th, the district court held him in contempt. Boylan immediately appealed, and this Court stayed the contempt order that same day. The government filed its brief with this Court at 6:48 p.m. on March 3, 1988. The panel heard oral argument on March 8th, and its opinion was filed before 5:00 p.m. the next day. This petition for rehearing in banc was filed on March 10th
 
 
 [2]
 At the time Boylan accepted the role of pretrial local counsel, he informed the district court that he and his firm
 intend to be available to coordinate all pending motions with other New Jersey counsel and to take the necessary steps to protect the interest of Mr. Accetturo up to the time when this matter goes to trial, at which [time] Mr. Ferrell[, Sr.,] will conduct the trial of this matter.
 Appendix at 5a (letter from Matthew P. Boylan, Esq. to the Hon. Harold A. Ackerman, Sept. 13, 1985) (emphases added). As the panel opinion notes, Boylan and a colleague billed Accetturo for only 61.9 hours of work during the fourteen months of pretrial preparation in this case. See pages 1410-11.
 
 
 [3]
 This case is totally distinguishable from Powell, where impecunious defendants could not afford to pay for counsel. Yet the panel relies on Powell as authority for the appointment of Boylan. The facts of Powell, as set forth by the Supreme Court, were as follows:
 The petitioners ... are negroes charged with the crime of rape, committed upon the persons of two white girls. The crime is said to have been committed on March 25, 1931. The indictment was returned in a state court of first instance on March 31, and the record recites that on the same day the defendants were arraigned and entered pleas of not guilty. There is a further recital to the effect that upon the arraignment they were represented by counsel. But no counsel had been employed, and aside from a statement made by the trial judge several days later during a colloquy immediately preceding the trial, the record does not disclose when, or under what circumstances, an appointment of counsel was made, or who was appointed. During the colloquy referred to, the trial judge, in response to a question, said that he had appointed all the members of the bar for the purpose of arraigning the defendants and then of course anticipated that the members of the bar would continue to help the defendants if no counsel appeared. Upon the argument here both sides accepted that as a correct statement of the facts concerning the matter.
 Powell, 287 U.S. at 49, 53 S.Ct. at 57.
 In the seminal decision of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court stressed that the "noble ideal [that every defendant stands equal before the law] cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." Id. at 344, 83 S.Ct. at 796-97 (emphasis added). Accetturo, in contrast to the Powell defendants and Clarence Earl Gideon, makes no claim to be a pauper. Indeed, I take judicial notice of the fact that Accetturo has retained the Philadelphia firm of Schnader, Harrison, Segal & Lewis. On March 15, 1988, two Schnader attorneys, James D. Crawford, Esq., and Arlin M. Adams, Esq., identifying themselves as "counsel for defendant," asked the district court to reconsider its February 25, 1988, denial of Accetturo's motion to sever his trial from that of his co-defendants. One of the Schnader attorneys appears before this Court and the United States Supreme Court on a regular basis. The other was a member of this Court for more than seventeen years. Nothing in the record indicates that they have undertaken Accetturo's representation pro bono publico.
 
 
 [4]
 The district court noted, for example, that Boylan
 is an outstanding criminal defense lawyer in his own right, and has behind him the impressive resources of one of [New Jersey]'s larger law firms, consisting, according to my count, ... [of] 90 lawyers, including such fine criminal defense lawyers as Mr. Theodore Wells, and Mr. Gerald Krovatin, just to name two.
 Appendix at 157a.
 
 
 [5]
 The panel's opinion expresses obvious dissatisfaction with the "leisurely pace tha[t] has characterized the[] proceedings" during this criminal "mega-trial." See page 1416. To the panel, "it is apparent that a more compressed trial schedule requiring early morning starts and late afternoon conclusions, and utilizing at least part of Saturday or some evenings, will significantly reduce the period necessary to bring this already protracted proceeding to its conclusion." Id
 I do recognize, from my observations in more than twenty-four years as a judge in this Circuit, that the four months it took to conduct voir dire in this case is unprecedented. The responsibility for the length of this trial, however, must be shared by the government, which has cast such a broad net in bringing this RICO conspiracy prosecution. In comparable situations, many able judges have severed portions of the original case, proceeding to trial on a manageable portion thereof. See Manual for Complex Litigation, Second, at 275 (1985); Fed.R.Crim.P. 14. The possibility that the district court has mismanaged this trial, however, is no basis for this Court to approve the conscription of Mr. Boylan.